In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00085-CR


______________________________




JUDON DOMITRIAN WEBSTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 07-0048X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 A Harrison County jury found Judon Domitrian Webster guilty of possession of less than one
gram of a controlled substance (cocaine) and of tampering with physical evidence (for trying to
swallow the cocaine). See Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003); Tex.
Penal Code Ann. § 37.09(a) (Vernon Supp. 2007). Webster raises three issues on appeal: (1) that
the sentences are a disproportionate punishment and (2) that the evidence was legally and factually
insufficient to support venue in Harrison County. 

(1) Disproportionate Sentencing Was Not Preserved

 Webster was sentenced to two years' confinement for possession, a sentence within the
applicable range of 180 days to two years. See Tex. Health & Safety Code Ann. § 481.115(b);
Tex. Penal Code Ann. § 12.35(a) (Vernon Supp. 2007). Webster was sentenced to ten years'
confinement for tampering, a sentence within the applicable range of two to ten years. See Tex.
Penal Code Ann. § 12.34 (Vernon 2003), § 37.09 (Vernon Supp. 2007). Webster contends the
sentence imposed by the trial court was disproportionate to the offense, citing Solem v. Helm, 463
U.S. 277 (1983), and Davis v. State, 905 S.W.2d 655 (Tex. App.--Texarkana 1995, pet. ref'd). 

 To preserve such a disproportionate sentencing complaint for appellate review, Webster must
have presented to the trial court a timely request, objection, or motion that stated the specific grounds
for the desired ruling, or the complaint must be apparent from the context. See Tex. R. App. P.
33.1(a)(1); Harrison v. State, 187 S.W.3d 429, 433 (Tex. Crim. App. 2005); Williams v. State, 191
S.W.3d 242, 262 (Tex. App.--Austin 2006, no pet.) (claims of cruel and unusual punishment must
be presented in timely manner); Nicholas v. State, 56 S.W.3d 760, 768 (Tex. App.--Houston [14th
Dist.] 2001, pet. ref'd) (failure to complain to trial court that sentences were cruel and unusual
waived claim of error for appellate review). We have reviewed the record of the trial proceeding. 
No relevant request, objection, or motion was made. And, while this Court has held that a motion
for new trial is an appropriate way to preserve this type of claim for review, see Williamson v. State,
175 S.W.3d 522, 523-24 (Tex. App.--Texarkana 2005, no pet.); Delacruz v. State, 167 S.W.3d 904
(Tex. App.--Texarkana 2005, no pet.), Webster did not file a motion for new trial. Webster has not
preserved such an issue for appeal.

(2) Venue in Harrison County Is Supported by Sufficient Evidence 

 Webster asserted, at trial during closing argument, that the State did not prove jurisdiction
or that the offenses occurred in Harrison County. He re-urges the venue issue on appeal.

 If there is no specific statute governing the venue of an offense, "the proper county for the
prosecution of offenses is that in which the offense was committed." Tex. Code Crim. Proc. Ann.
art. 13.18 (Vernon 2005). The State must prove venue by a preponderance of the evidence. Murphy
v. State, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003); see also Tex. Code Crim. Proc. Ann. art.
13.17 (Vernon 2005). 

 In a legal-sufficiency review of a venue determination, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found, by a
preponderance of the evidence, that the offense occurred in the county alleged. Duvall v. State, 189
S.W.3d 828, 830 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd); Vanschoyck v. State, 189 S.W.3d
333 (Tex. App.--Texarkana 2006, pet. ref'd). A factual sufficiency review of the evidence
traditionally, under the reasonable doubt standard, determines, after reviewing all the evidence in a
neutral light, whether the evidence supporting the verdict is outweighed by the great weight and
preponderance of the evidence or is so weak that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006). Here, the burden on the State is only to prove the venue facts by a preponderance of the
evidence, rather than the beyond a reasonable doubt standard. Evidence sufficiently establishes
venue if "from the evidence the jury may reasonably conclude that the offense was committed in the
county alleged." Rippee v. State, 384 S.W.2d 717, 718 (Tex. Crim. App. 1964). 

 Venue may be established by direct or circumstantial evidence. Duvall, 189 S.W.3d at 831;
Sixta v. State, 875 S.W.2d 17, 18 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). 

 At trial, the State presented the testimony of C. J. Boyd that he was working in his capacity
as an officer of the Marshall, Texas, police department on September 23, 2006, when he stopped
Webster for a traffic violation. Officer Boyd testified that he observed Webster leave the Burnett
Hotel near the intersection of South Washington and Pinecrest, cross Pinecrest to the Fina Station,
then head eastbound on Pinecrest at night without his headlights on. Boyd stopped Webster in the
400 block of Pinecrest. During the stop at this location, Boyd found in Webster's possession a
bagged substance later determined to be cocaine. Also at this location, Boyd placed the bagged
cocaine on the car trunk while preparing to handcuff Webster. While getting the handcuffs, Boyd
noticed the cocaine had disappeared. On searching Webster, again at the same location, Boyd found
the bag of cocaine in Webster's mouth. Boyd stated he transported Webster to the Marshall Police
Department and then the Harrison County jail. The jury then saw the in-patrol-car videotape of the
incident. Boyd never testified that the various locations about which he testified were in the City of
Marshall or in Harrison County.

 The State also presented the testimony of Marshall Police Department canine officer Glen
Stone that he was working in that capacity September 23, 2006, as backup to Boyd in searching for
the hidden cocaine bag. Stone did not testify to the location of the offenses.

 Finally, the State presented the testimony of Melissa Harrison, a scientist at the state crime
laboratory in Tyler, that she had analyzed the substance possessed by Webster and determined that
it was cocaine. State Exhibit 4, Harrison's report, which was admitted to evidence and published to
the jury, indicates that the "County of Offense" is Harrison. 

 The evidence reveals direct evidence in Harrison's laboratory report of venue, for the
possession offense, in Harrison County. The evidence also reveals circumstantial evidence of venue,
for both offenses, in Harrison County. In addition to the laboratory report, the arresting officers were
employed by the Marshall Police Department, transported Webster to the Marshall Police
Department after arrest, and then transported Webster to the Harrison County jail. Uncontroverted
testimony indicated that both offenses occurred in the same location. Viewing the evidence in the
light most favorable to the verdict, a rational jury could have found, by a preponderance of the
evidence, that the offenses occurred in Harrison County. Viewing all the evidence in a neutral light,
we cannot say the evidence supporting venue in Harrison County is outweighed by the great weight
and preponderance of the evidence or is so weak that the finding of venue in Harrison County is
clearly wrong or manifestly unjust. The jury could reasonably conclude, by a preponderance of the
evidence, that the offenses were committed in the county alleged. We overrule the points of error.

(3) Reformation of Judgment

 We note, sua sponte, that the judgment in this appeal contains an error. The judgment, signed
and dated May 9, 2007, indicates the date of the offenses was "9/23/2007." The record, however,
indicates the date of the offenses was September 23, 2006, not in 2007. We have the authority to
correct and reform a judgment to make the record speak the truth. See French v. State, 830 S.W.2d
607, 609 (Tex. Crim. App. 1992); Smith v. State, 223 S.W.3d 690, 696 (Tex. App.--Texarkana
2007, no pet.); see also Tex. R. App. P. 43.2(b). Accordingly, we reform the trial court's judgment
to indicate the correct date of the offenses as "9/23/2006." 





 As reformed, we affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 8, 2007

Date Decided: November 16, 2007


Do Not Publish



den="false"
 UnhideWhenUsed="false" Name="Medium Shading 1 Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00217-CR

                                                ______________________________

 

 

 

                                                   IN
RE:  CURLEY JEFFERSON

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                        Memorandum
Opinion by Chief Justice Morriss

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Curley Jefferson has filed a
petition for writ of mandamus seeking various records, pleadings, and evidence,
but without specifying the person or persons against whom he would have us
issue such a writ.  Because he has not
established that any district or county court has failed in doing a required
ministerial act, we deny Jeffersons petition.

            Jefferson originally filed a
petition for writ of mandamus with the Texas Court of Criminal Appeals.[1]  That court denied his petition without a
written order.  In re Jefferson, No. WR-74,910-01 (Tex. Crim. App. Nov. 10, 2010)
(orig. proceeding [leave denied]) (without opinion).[2]  In the petition to this Court, Jefferson
states he had previously filed a petition for writ of mandamus with the Texas
Court of Criminal Appeals and that he now sends this Original Application for
writ of mandamus and forwards the same request for petition to this
Court.  We will presume Jefferson
intended to incorporate his complaints in his original petition for writ of
mandamus into the petition for writ of mandamus with this Court.  Neither petition, though, clearly specifies
against whom Jefferson is seeking relief. 
In his original petition, Jefferson prays relief be granted for the
following:

1.  The record of the grand jury selection,
including; age, race, and sex

2.  The records of the grand jury instruction,
disclosures, and transcripts

3.  The records (copies) of indictments
for Curley Jefferson and Kelvis Brannon

4.  The record (copy) of the arrest warrant
case # 09-46-136

5.  The record of probation; Fees paid, hours
completed and probationers monthly summery notes

6.  The accurate records of Transcripts
and a copy of the recorded audio

7.  Copy of PDR, filed by attorney, and a
copy of the motion to suppress attorney filed

8.  The evidence requested but never given
in the Motion for Discovery filed July 21, 2009

A.  (1) Police reports: (4) Game Warden: Rob
Furlow, (6) CI sworn affidavit

B.  (2) Pictures, Photos, & Communication
Evidence: Police compliant no. # 09-46-136

1.  (A) Pictures of all evidence seized
SEE: (8) and (1-9) in motion for records all suspected narcotics.  Where Jayson states Photographs of all the
items were taken in the location they were found and the pictures of 2.  Tanita model 1479 digital scale and Fw-250
Digital scale taken in the location they were found

 

(Errors
in original).

 

            To be entitled to mandamus relief, a relator must show
that he or she has no adequate remedy at law to redress the alleged harm and
that he or she seeks to compel a ministerial act, not involving a discretionary
or judicial decision.  State ex rel.
Young v. Sixth Judicial Dist. Court of Appeals at Texarkana, 236 S.W.3d
207, 210 (Tex. Crim. App. 2007) (orig. proceeding).  An act is ministerial if it constitutes a
duty clearly fixed and required by law.  State
ex rel. Curry v. Gray, 726
S.W.2d 125, 128 (Tex. Crim. App. 1987).

            To the extent Jeffersons petition
could be interpreted to seek relief against parties other than a district
court, we lack jurisdiction to grant his request.  Presumably all of these records would be in
the custody of the District Clerk of Marion County, and this Court does not
have mandamus jurisdiction over
district clerks.  In re Rodriguez, No. 06-08-00122-CV,
2008 Tex. App. LEXIS 7972 (Tex. App.Texarkana Oct. 22, 2008, orig. proceeding)
(mem. op.); In re Coronado, 980 S.W.2d 691, 69293 (Tex. App.San
Antonio 1998, orig. proceeding) (per curiam) (for district clerk to fall within jurisdictional reach of court of
appeals, must establish that mandamus
is necessary to enforce court of appeals jurisdiction).  This Courts
mandamus jurisdiction, except when necessary to enforce our jurisdiction, is
limited to district courts or county courts. 
Tex. Govt Code Ann. § 22.221 (Vernon 2004).  To the extent Jefferson seeks relief against
parties other than the district court, we deny his request.

            To the extent that Jefferson
complains about the district court denying one or more motions seeking records,
Jefferson has failed to establish the trial court had a ministerial duty to
grant his request.  A ministerial act is
one which is to be accomplished without the exercise of discretion or
judgment.  Curry, 726 S.W.2d at 128.  Deciding how to rule on a motion
requesting discretionary relief is not a ministerial act.  Id.; In re Birdwell, 224 S.W.3d 864, 865 (Tex. App.Waco
2007, orig. proceeding); see Buntion v. Harmon, 827 S.W.2d 945, 947 n.2 (Tex. Crim. App. 1992) (relator must
show a clear right to the relief sought).

 

 

 

            Jefferson requests copies of his
indictment, the motion to suppress, and motion for discovery.[3]  An indigent criminal defendant has a right to
receive, while pursuing a direct appeal, one copy of the appellate record
without payment.  Tex. R. App. P. 20.2; Ex
parte Trainer, 181 S.W.3d 358 (Tex. Crim. App. 2005).  Jefferson was appointed an attorney to
represent him on appeal.  Jeffersons
attorney filed an appeal raising several points of error and also filed a
petition for discretionary review, which was refused.  See Jefferson v. State, No. 06-09-00149-CR,
2009 Tex. App. LEXIS 9407 (Tex. App.Texarkana Dec. 11, 2009, pet. refd).  The mandate was issued May 17, 2010.  Even if Jefferson has been declared indigent,
he has failed to establish that neither he nor his appellate attorney were
provided with a free copy of the record on direct appeal.  Jefferson has failed to establish he is
entitled to an additional copy of the record after the direct appeal has been
concluded.  See Trainer, 181 S.W.3d
358.  

            Jeffersons remaining requests are
essentially requests for discovery after the resolution of his direct
appeal.  Jefferson alleges these
documents are needed to prosecute his appeal. 
However, Jeffersons direct appeal has been resolved and this Courts
mandate has issued.  Further, Jefferson
does not allege he is entitled to the documents as discovery under Article
11.07 of the Texas Code of Criminal Procedure. 
See Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp.
2010).  The Texas courts have recognized
that the exclusive
post-conviction remedy in final felony convictions in Texas courts is through a
writ of habeas corpus pursuant to Tex.
Code Crim. Proc. art. 11.07.  Olivo v. State, 918 S.W.2d 519, 525
n.8 (Tex. Crim. App. 1996); accord In re Harrison, 187 S.W.3d 199, 200
(Tex. App.Texarkana 2006, orig. proceeding). 
Jefferson has failed to demonstrate the trial court had a ministerial
duty to grant his motion.

            For the reasons stated, we deny
Jeffersons petition for writ of mandamus.

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          December 16, 2010

Date
Decided:             December 17, 2010

 

Do
Not Publish











[1]Both
petitions, the one filed with the Texas Court of Criminal Appeals and the one
filed with this Court, are styled as being in the County Criminal Court No.
276 Marion County, Texas.  This Court
takes judicial notice that the 276th  Judicial District Courts jurisdiction
includes Marion County.  Jeffersons
petition for writ of mandamus clearly indicates he is requesting relief from an
appellate court, despite being styled as being before the district court.  The original petition prays that the Court of Appeals grant his MANDAMUS. . . .  

 





[2]In
Jeffersons petition for writ of mandamus to this Court, Jefferson states the
Texas Court of Criminal Appeals denied his petition citing Padilla v. McDaniel, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003) (We
hold that when a court of appeals and this court have concurrent, original
jurisdiction of a petition for a writ of mandamus against the judge of a
district or county court, the petition should be presented first to the court
of appeals unless there is a compelling reason not to do so.).   Although the postcard from the Texas Court
of Criminal Appeals cited Padilla,
the Texas Court of Criminal Appeals did not issue an opinion in denying
Jeffersons petition.





[3]Jefferson
also requests accurate records of transcripts.  Jefferson is not complaining that he failed
to receive a copy of his appellate record. 
Jefferson is complaining that the appellate record is not accuratenot
that he failed to receive the reporters record.