

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-95,092-01

### IN RE STATE OF TEXAS EX REL. BILL D. HICKS, Relator

**ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS
AND PETITION FOR WRIT OF MANDAMUS
IN CAUSE NO. 20020D00230
IN THE 327TH CRIMINAL DISTRICT COURT
EL PASO COUNTY**

*Per curiam.* NEWELL, J., filed a concurring and dissenting opinion in which WALKER, J., joined.

## O P I N I O N

Before us are (1) the State's Motion for Leave to File a Petition for Writ of Mandamus and (2) the accompanying Petition. Because this case involves a death sentence, it was proper for the State to file the motion and petition in this Court. *Cf. Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003).

Real-Party-in-Interest David Renteria was convicted of capital murder and sentenced to death in September 2003. On direct appeal, this Court affirmed the judgment of guilt but reversed Renteria's death sentence and remanded the case for a new

punishment hearing. *Renteria v. State*, 206 S.W.3d 689, 710 (Tex. Crim. App. 2006). In May 2008, following a second punishment hearing, Renteria was again sentenced to death. On direct appeal from this resentencing, this Court affirmed Renteria's death sentence. *Renteria v. State*, No. AP-74,829, slip op. at 100 (Tex. Crim. App. May 4, 2011) (not designated for publication). Mandate issued on September 26, 2011.

Meanwhile, Renteria filed multiple postconviction habeas applications under Texas Code of Criminal Procedure Article 11.071. He filed his first 11.071 application, challenging his initial conviction and sentence, in August 2006. He then filed his second and third 11.071 applications, following his resentencing, in August 2014.

This Court disposed of all of Renteria's 11.071 applications on the same date: December 17, 2014. On the first application, we denied the claims challenging the judgment of guilt and dismissed as moot the claims challenging Renteria's death sentence. *Ex parte Renteria*, No. WR-65,627-01 (Tex. Crim. App. Dec. 17, 2014) (not designated for publication). On the second application, we denied the claims challenging Renteria's death sentence. *Ex parte Renteria*, No. WR-65,627-02 (Tex. Crim. App. Dec. 17, 2014) (not designated for publication). Finally, we dismissed Renteria's third 11.071 application as an abuse of the writ for failing to satisfy Article 11.071, Section 5. *Ex parte Renteria*, No. WR-65,627-03 (Tex. Crim. App. Dec. 17, 2014). As of the date of this opinion, Renteria has not filed a fourth 11.071 application.

On July 6, 2023,[1] Respondent, Judge Monique Velarde Reyes of the 327th District Court of El Paso County, Texas, entered an order (Execution Order) scheduling Renteria's execution for November 16. On July 10, in compliance with the Execution Order, the District Clerk of El Paso County issued a warrant for Renteria's execution.

On July 12, Renteria filed in the district court a "Motion to Reconsider the Court's *Execution Order* and Request for a Hearing" (italics in original) (Motion to Reconsider). In brief, the Motion to Reconsider argued that Renteria was entitled to "reasonable notice and an adversarial process" before Respondent set an execution date. Initially, Respondent took no action on Renteria's Motion to Reconsider. On August 14, Renteria filed in the district court a "Motion to Compel Access to District Attorney's File" (Motion to Compel). In brief, the Motion to Compel urged Respondent to order the El Paso County District Attorney "to provide Mr. Renteria's counsel access to all files related to Mr. Renteria's capital murder case." In support, the Motion to Compel invoked Article 39.14(a) of the Texas Code of Criminal Procedure and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Respondent ultimately held a hearing on Renteria's motions. The State opposed the motions, but at the hearing's conclusion, Respondent indicated she would grant them. To that effect, Respondent issued two orders.

---

[1] Unless otherwise specified, all subsequent dates in this opinion refer to the year 2023.

In an order dated August 28, Respondent commanded the State to "make available for inspection and copying all files and materials in its possession, custody, or control that is listed in Section (a) of Article 39.14," giving the State ten days to comply. Then, in an order dated August 29, Respondent (1) gave the State twenty days to "make its files available to Defendant's counsel for inspection and copying subject to such claims of work-product or other privilege as the State substantiates in a privilege log"; (2) purported to "VACATE[]" the Execution Order; and (3) and directed "[t]he Clerk" (presumably, the District Clerk of El Paso County) to "withdraw the warrant for Defendant's execution." For ease of use, we will refer to items (2) and (3) of Respondent's August 29 order as the "Withdrawal Orders," and we will refer to Respondent's August 28 order and item (1) of Respondent's August 29 order as the "Discovery Orders."

Relator Bill D. Hicks, the District Attorney for El Paso County, promptly brought this mandamus action challenging the Withdrawal and Discovery Orders.[2] First, Relator claims that the Withdrawal Orders conflict with Texas Code of Criminal Procedure Article 43.141, *see* TEX. CODE CRIM. PROC. art. 43.141(d) (specifying when a convicting court can "modify or withdraw the order of the court setting a date for execution"), and this Court's application of the same. Second, Relator claims that the Discovery Orders are unlawful because (A) a district court has no jurisdiction to consider discovery

---

[2] Relator also brought a "Motion for Emergency Stay of Proceedings … in order to suspend compliance with these orders." We granted the State's Motion for Emergency Stay on September 8. Consequently, that motion is no longer before us.

requests under these circumstances and (B) Respondent had no authority under Texas law to grant them.

Leave to file is granted. On the portion of Relator's mandamus petition challenging the Withdrawal Orders, relief is granted. With no Article 11.071 or Chapter 64 pleadings before her, Respondent had no authority to vacate the Execution Order or order the District Clerk to withdraw the execution warrant. *See* TEX. CODE CRIM. PROC. art. 43.141(d); *In re State of Texas ex rel. Risinger*, No. WR-84,212-01 (Tex. Crim. App. Nov. 18, 2015) (not designated for publication); *In re Roach*, No. WR-41,168-08 (Tex. Crim. App. Jun. 17, 2008) (not designated for publication).

Relief is also granted on the portion of Relator's mandamus petition challenging the Discovery Orders. It is well settled that a trial court must derive its jurisdiction from either the Texas Constitution or legislative enactments. *See, e.g.*, *Staley v. State*, 420 S.W.3d 785, 795 (Tex. Crim. App. 2013). When a conviction has been affirmed on appeal and mandate has issued, general jurisdiction is not restored in the trial court. *Id.* A trial court can obtain postconviction jurisdiction over a matter statutorily—for example, to set an execution date, conduct DNA testing, or determine whether an inmate is competent to be executed. *Id.* But the statutes bestowing jurisdiction over these matters also define the scope of that jurisdiction. *Id.* And even when a trial court has jurisdiction over a matter, it may lack authority to take a certain action. *Id.*

By the time Respondent issued the Discovery Orders, Renteria's conviction and sentence had been affirmed on direct appeal, and this Court's mandate had issued. Therefore, the trial court did not have general jurisdiction over Renteria's case. Further,

all of Renteria's prior 11.071 applications had been disposed of, and Respondent had no 11.071 or Chapter 64 pleadings before her. Therefore, the trial court did not have jurisdiction stemming from postconviction habeas proceedings or proceedings relating to forensic DNA testing.

Respondent's August 28 order mentions Article 39.14(a), and specifically, the "Michael Morton Act." *See* Acts 2013, 83rd Leg., R.S., Ch. 49 (S.B. 1611) (Michael Morton Act), §§ 1, 2, eff. Jan. 1, 2014. But the Michael Morton Act's saving clause states that "[t]he change in law made by this Act applies to the prosecution of an offense committed on or after the effective date of this Act"—January 1, 2014. *See id.* §§ 3, 4. In Renteria's case, the offense was committed in November 2001. Further, even if some portions of Article 39.14 apply to Renteria's case at this stage, we have never construed Article 39.14(a) to give district courts continuing jurisdiction to entertain discovery requests in the absence of an active case or pleading. Indeed, on its face, Article 39.14(a) presupposes some "action." *See* TEX. CODE CRIM. PROC. art. 39.14(a) (referring to "evidence material to any matter involved in the *action*") (emphasis added).

Respondent's August 29 order suggests that, in Respondent's view, issuing the Discovery Orders was necessary to safeguard Renteria's Fourteenth Amendment rights to equal protection and due process. But the Fourteenth Amendment is a source of individual rights, not a source of state-court jurisdiction. *See, e.g.*, *Staley*, 420 S.W.3d at 795 ("A trial court must derive its jurisdiction from either the *Texas* Constitution or legislative enactments.") (emphasis added); *State v. Holloway*, 360 S.W.3d 480, 485 (Tex. Crim. App. 2012) (same). Without a pleading before her invoking a legitimate

source of district-court jurisdiction, Respondent had no freewheeling jurisdiction to seek to safeguard Renteria's Fourteenth Amendment rights.

Ultimately, our review of the applicable constitutional and statutory provisions persuades us that, when Respondent issued the Discovery Orders, the only jurisdiction the trial court *might* have had over matters pertaining to Renteria's pending execution is that bestowed by Article 43.141—to "modify or withdraw" the execution date. But, as mentioned, Article 43.141 itself defines the scope of that jurisdiction. And that statute expressly states that a trial court may modify or withdraw an execution date if the court determines that additional proceedings are necessary on a "filed" 11.071 application or a "submitted" Chapter 64 motion. *See* TEX. CODE CRIM. PROC. art. 43.141(d). Neither such pleading was before Respondent when she issued the Discovery Orders. That being the case, Article 43.141 did not give the trial court general jurisdiction over matters pertaining to Renteria's pending execution. At most, it gave the court jurisdiction to entertain Renteria's motion to reconsider the execution date. By issuing a discovery order in a matter over which she had no jurisdiction, Respondent violated a ministerial duty. *See In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015) ("If a trial judge lacks authority or jurisdiction to take particular action, the judge has a ministerial duty to refrain from taking that action, to reject or overrule requests that he take such action, and to undo the action if he has already taken it.") (internal quotation marks omitted); *see also State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002) (plurality op.) ("Without jurisdiction, the trial court has no power to act.").

Accordingly, Respondent shall immediately rescind the portion of her August 29 order purporting to "VACATE[]" her earlier Execution Order and directing "[t]he Clerk" to withdraw the execution warrant. Respondent shall also immediately rescind the portions of her August 28 and 29 orders commanding the State to make its files available to Renteria's counsel.

Delivered:    September 18, 2023
Do Not Publish